IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| GARY COMEAU, <br><br> *Plaintiff*, <br><br> v. <br><br> SMP SPECIALTY METAL PRODUCTS INC., 1140398 ONTARIO LTD., AND JOHN CUNERTY, <br><br> *Defendants*. | Civil Action No.: _____ |

## COMPLAINT

Plaintiff Gary Comeau, by and through his undersigned counsel, files this Complaint against Defendants SMP Specialty Metal Products Inc. ("SMP"), 1140398 Ontario Ltd. ("Ontario Ltd") (collectively with SMP, the "Defendant Companies"), and John Cunerty for Correction of Patent Inventorship under 35 U.S.C. § 256.  SMP, Ontario Ltd, and Mr. Cunerty (who serves as President and a Director of both Defendant Companies), misappropriated technology invented solely by Gary Comeau, and filed patent applications omitting Mr. Comeau as an inventor and/or falsely naming Mr. Cunerty as an inventor.  These applications ultimately issued as U.S. Patent Nos. 9,708,823 ("the '823 Patent"); 10,273,702 ("the '702 Patent"); and 10,662,665 ("the '665 Patent").  Accordingly, as further detailed herein, Plaintiff Gary Comeau seeks correction of inventorship and recovery of his intellectual property rights.

## PARTIES

1.   Plaintiff Gary Comeau is a Canadian citizen residing in Burlington, Ontario, Canada.

2. Defendant SMP is a Canadian corporation with its principal place of business located at 326 Watline Avenue, Mississauga, Ontario, L4Z 1X2, Canada.  On information and belief, Defendant SMP's two primary businesses are (1) the manufacture and sale of hot tub cover lifter products; and (2) bulk metal sales.

3. Defendant Ontario Ltd is a Canadian corporation with its principal place of business located at 326 Watline Avenue, Mississauga, Ontario, L4Z 1X2, Canada.  Prior to an August 7, 2012 change of name, Ontario Ltd was known as *S.M.P. Specialty Metal Products Ltd.* (which is distinct from Defendant SMP's name, "*SMP* Specialty Metal Products *Inc.*").  On information and belief, Defendant Ontario Ltd was a predecessor to Defendant SMP, and sold the bulk of its assets to Defendant SMP pursuant to an agreement dated June 30, 2012 with an effective transfer date of July 31, 2012.  On information and belief, Ontario Ltd today has limited business operations.

4. Defendant John Cunerty is a Canadian citizen residing in Toronto, Ontario, Canada.  Mr. Cunerty serves as President and Director of Defendants SMP and Ontario Ltd.  Mr. Cunerty is also a shareholder of Defendants SMP and Ontario Ltd.

## ALLEGATIONS

5. To retain heat, hot tubs often employ a thick, insulated cover, which may be unwieldy or heavy.  A hot tub cover lifter is a mechanical device, typically mounted to the outside walls of a hot tub, that helps hot tub users to open and close a hot tub cover.  One example of a hot tub cover lifter is the Visionlift Boomerang, invented by Plaintiff Gary Comeau and depicted in the below photos.

2



*Photos of the Visionlift Boomerang Cover Lifter Product*

6. In 1995, Plaintiff Gary Comeau, Defendant John Cunerty, and Mr. Cunerty's wife, May Cunerty (also known as May Anis), jointly founded S.M.P. Specialty Metal Products Ltd. in Mississauga, Ontario to conduct a bulk metal business. In 2002, S.M.P. Specialty Metal Products Ltd. began to manufacture and sell hot tub cover lifters. S.M.P. Specialty Metal Products Ltd. was subsequently renamed "1140398 Ontario Ltd" (i.e., Defendant Ontario Ltd), which in turn sold the bulk of its assets to Defendant SMP pursuant to an agreement dated June 30, 2012 with an effective transfer date of July 31, 2012.

7. Since the founding of the business in 1995, Defendant John Cunerty has held the title of President of the Defendant Companies, and his sole significant job function has been to oversee the business affairs of the Defendant companies at a high level.

8. From the founding of the business until his departure in September 2017, Plaintiff Gary Comeau held the title of General Manager of the Defendant Companies. Mr. Comeau's primary responsibilities were managing the day-to-day operations of the Defendant Companies, such as manufacturing, fabrication, and warehousing. Independently, of his own accord, and

without instruction or direction from the Defendants or employees of the Defendants, Mr. Comeau worked to develop new cover lifter technologies, inventions, and products.

### Invention of the '823 Patent

9. Gary Comeau fully and solely conceived of and reduced to practice the inventions now claimed in the '823 Patent in 2014. John Cunerty did not assist, direct, or otherwise substantively participate in this process. John Cunerty did not contribute to any claim of the '823 Patent.

10. In January 2014, Gary Comeau attended the International Pool, Spa, and Patio Expo in Atlantic City, New Jersey. At the expo, Wade Spicer, a representative for spa manufacturer Strong Industries, Inc. (manufacturer of the Strong Spas brand of hot tubs), demonstrated a Strong Industries cover lifter to Mr. Comeau. Although it provided basic lifting functionality, Mr. Comeau formed the opinion that the Strong Industries lifter was deficient in part because it was extremely bulky, extending laterally several feet from each wall of the spa. Inspired to develop a superior lifter, Mr. Comeau made a trip to Strong Industries' manufacturing plant in North Hampton, Pennsylvania on his way back from the expo to assess the structure of Strong Industries' hot tubs in greater detail. There, Mr. Comeau independently conceived of a slim, elegant lifter system that would extend only inches from the walls of the hot tub, and would use a pneumatic spring coupled to a lever to lessen the force a user must apply to both open and close the cover.

11. At Mr. Comeau's request, to facilitate testing of Mr. Comeau's invention, Strong Industries subsequently shipped a spa unit to Mr. Comeau in Mississauga in approximately July 2014. Working alone, using available scrap metal and parts, Mr. Comeau built an initial prototype of his invention for the Strong Industries hot tub in just a few days. No other

individual assisted, directed, or otherwise substantively participated in the construction of this initial prototype.

12. Once the initial prototype was complete, Mr. Comeau took a video depicting its complete design and showing its opening and closing operations in action. Mr. Comeau electronically transmitted this video to Wade Spicer of Strong Industries. Mr. Spicer expressed admiration and excitement for the design, and promptly flew to Canada to visit SMP's Mississauga warehouse to test the design in person. After testing the lifter in-person, Mr. Spicer again expressed enthusiasm for Mr. Comeau's invention, and agreed with Mr. Comeau's assessment that the invention could be commercially successful.

13. Mr. Comeau subsequently worked diligently to refine a version of the invention for mass production. Again operating without the direction, assistance, or contribution of John Cunerty, Mr. Comeau completed a commercial version of the invention by early November 2014.

14. SMP named the commercial version of Mr. Comeau's invention the "Visionlift," and exhibited it at the November 2014 International Pool, Spa, and Patio Expo in Orlando.

15. Shortly before the November 2014 trade show, John Cunerty, acting on behalf of SMP, directed patent agents at Bereskin & Parr LLP to prepare a patent application covering Mr. Comeau's invention. Ultimately, SMP's patent agents filed two United States provisional patent applications: U.S. Pat. App. No. 62/074,301 on November 3, 2014 and U.S. Pat. App. 62/107,741 on January 26, 2015. Then, on May 15, 2015, SMP's patent agents filed a non-provisional application, U.S. Pat. App. No. 14/713,176, claiming priority to both provisional applications. This application ultimately issued as the '823 Patent.

16. Despite the fact that John Cunerty made no contribution to the conception or reduction to practice of any of the patent claims, Mr. Cunerty improperly directed SMP's patent agents to list both himself and Mr. Comeau as inventors of the '823 Patent.

### Invention of the '702 and '665 Patents

17. Gary Comeau fully and solely conceived of the inventions now claimed in the '702 Patent and the '665 Patent in 2015 and 2016. John Cunerty did not assist, direct, or otherwise substantively participate in this process. John Cunerty did not contribute to any claim of the '702 Patent or the '665 Patent.

18. While developing the invention claimed in the '823 Patent, Gary Comeau became aware of another potential improvement to the technology. Namely, as disclosed in the '823 Patent, the pneumatic springs (for example, blue below) that reduce the force required to open and close a hot tub cover were mounted to the hot tub at secondary mounting points (for example, red below) distinct from the primary mounting points (for example, green below) where the remainder of the lifter was mounted, as illustrated in the below annotated diagram.



*Fig. 3 of U.S. Pat. No. 10,273,702 (Annotations Added)*

19. Mr. Comeau realized that this structure meant that installers were required to carefully calculate and calibrate the spatial arrangement between the two mounting points to ensure the pneumatic spring forces were oriented at the appropriate angle and direction to effectively assist in opening and closing the cover. Because this calculation and calibration could be difficult for amateur installers, Mr. Comeau insisted that SMP sell only to experienced installers—rather than directly to end users—when SMP commercially released the Visionlift in 2015.

20. Again operating independently and without the direction, assistance, or contribution of John Cunerty, Mr. Comeau set to work developing a solution that would ease the installation process. By November 2015, Mr. Comeau had conceived of a lifter design employing a unitary construction that did not require a separate mounting point for the pneumatic spring on the hot tub. Instead, the invention employed a spring mounting portion that

7

connected directly to the lifter's primary mounting point. Accordingly, an installer would only be required to correctly calibrate a single mounting point, and would not need to perform the complex adjustments required to correctly align two independent mounting points.

21. In late 2015 and early 2016, Mr. Comeau documented his invention in a series of drawings substantively equivalent to those eventually included as figures in the '702 and '665 Patents. For reference, an annotated drawing from the '702 and '665 Patents—substantively equivalent to Mr. Comeau's drawings—is depicted below.



*Fig. 2 of U.S. Pat. Nos. 10,273,702 and 10,662,665 (Annotations Added)*

22. Throughout 2016 and 2017, Mr. Comeau shared his invention internally with SMP employees. In particular, Mr. Comeau shared copies of his drawings, and provided detailed explanations of the design and operation of the new invention to SMP employees including John

8

Cunerty, Jolene Foote, Dave Herman, Paul Arsenal, and Roy Filmore.  Mr. Comeau further explained to these individuals the importance of his novel solution, emphasizing that the Visionlift product would not be suitable for sale directly to end users or amateur installers until this new invention was incorporated into it.

23. In September 2017, Mr. Cunerty and Mrs. Cunerty wrongfully terminated Mr. Comeau's employment at SMP.

24. On information and belief, John Cunerty thereafter directed patent agents at Bereskin & Parr LLP to prepare a patent application covering Mr. Comeau's new invention.  To gain an understanding of the details of the invention and disclose it to SMP's patent agents, Mr. Cunerty used the drawings, technical information, and explanations provided by Mr. Comeau to Mr. Cunerty and other SMP employees before Mr. Comeau's departure.  On October 26, 2018, SMP's patent agents filed a United States Provisional App. No. 62/751,195 directed to Mr. Comeau's new invention.  On October 29, 2018, SMP's patent agents filed United States Non-Provisional Patent App. No. 16/173,752, which claimed priority to the provisional application.  On March 12, 2019, SMP's patent agents filed United States Non-Provisional Application No. 16/299,529, as a continuation of that application.  Application No. 16/173,752 ultimately issued as the '702 Patent on April 30, 2019.  Application No. 16/299,529 ultimately issued as the '665 Patent on May 26, 2020.  These patent applications improperly listed John Cunerty as an inventor and omitted Mr. Comeau as an inventor.

25. Although these patent applications were filed after Mr. Comeau left his position at SMP, they added no substantive features to Mr. Comeau's inventions.  Moreover, at no point did John Cunerty make an inventive contribution to the subject matter disclosed or claimed therein.

26. SMP and John Cunerty did not inform Mr. Comeau that they had filed these patent applications, let alone that the applications falsely listed Mr. Cunerty—rather than Mr. Comeau—as the inventor of these technologies.

**Standing**

27. Defendants' violations of 35 U.S.C. § 256 have injured Plaintiff Gary Comeau, and will continue to injure him absent judicial redress.

28. But for Defendants' violations, Plaintiff Gary Comeau would be recognized as the sole inventor of the '823, '702, and '665 Patents, and the owner of at least the '702 and '665 Patents. Accordingly, a favorable decision in this matter would confirm Mr. Comeau's ownership of the '702 and '665 Patents, which have significant monetary value.

29. Additionally, Defendants' violations with respect to the '823, '702, and '665 Patents have damaged Mr. Comeau's professional reputation, resulting in actual and imminent pecuniary consequences to Mr. Comeau.

30. Within the pool and spa industry (as well as the broader metalworking and mechanical device industries), being considered an inventor of important subject matter is a mark of success, prestige, and unique expertise, comparable to being an author of an important scientific paper. Similarly, the number of patents on which an individual is named as inventor increases the perceived prestige and expertise of the individual. Patent inventorship effectively acts as a seal of approval that creates employment opportunities, and increases the potential compensation for such positions. Further, credit for patent inventorship creates opportunities to develop and market new products to manufacturers and vendors who would otherwise be unfamiliar with an individual's abilities. Moreover, credit for patent inventorship is a significant factor considered in evaluating whether to award promotions to employees within the industry.

31. The reputational benefit and public recognition that flow from patent inventorship are particularly critical to Gary Comeau, because his technical ingenuity is self-taught, and he lacks a formal education in a technical field that would independently corroborate his abilities to potential employers, business partners, and customers.

32. Similarly, the reputational benefit and public recognition that flow from patent inventorship are critical to Mr. Comeau, because his former title of General Manager of SMP does not expressly convey to potential employers, business partners, and customers Mr. Comeau's skill designing and developing new pool and spa (or other mechanical) products and technologies.

33. Defendants' violations of 35 U.S.C. § 256 have deprived and continue to deprive Mr. Comeau of such reputational benefits and the concomitant professional and economic rewards.

34. After leaving SMP, Mr. Comeau had difficulty obtaining employment. Ultimately, Mr. Comeau was only able to secure a position conducting and supervising manual labor in a manufacturing plant unrelated to the pool and spa industry. Mr. Comeau's salary, benefits, and position are significantly less than commensurate with his level of skill and experience in the mechanical arts. Had Mr. Comeau been able to cite his sole inventorship of the '823, '702, and '665 Patents during his job search, he likely would have been able to secure more suitable, lucrative employment. This loss of employment prospects has resulted in economic harm to Mr. Comeau, and will continue to result in economic harm to Mr. Comeau in the absence of judicial redress.

35. After his employment at SMP was terminated, Gary Comeau continued to serve as a Director of the company until he resigned from that position on December 18, 2020. To

avoid any appearance of competition with SMP, Mr. Comeau declined to pursue employment designing, manufacturing, or selling hot tub cover lifters until he resigned from his role as Director of SMP. However, since December 18, 2020, Mr. Comeau has sought employment within the hot tub cover lifter industry. Mr. Comeau continues to search for such economic opportunities. Without credit as an inventor of the '823, '702, and '665 Patents, Mr. Comeau has been unable to secure such a position. This loss of prospects has resulted in economic harm to Mr. Comeau, and will continue to result in economic harm to Mr. Comeau in the absence of judicial redress.

36. On information and belief, since Gary Comeau departed from SMP, Defendants have falsely disparaged Mr. Comeau's skillset and character to third parties within the pool and spa industry. The reputational and economic consequences of Defendants' violations of 35 U.S.C. § 256 are particularly severe because the failure to name Mr. Comeau as the sole inventor of the '823, '702, and '665 Patents appears to corroborate Defendants' disparagement to those unfamiliar with the matter.

37. Moreover, the SMP product that purportedly practices claims of the '823 Patent (the "Visionlift") and the SMP product that purportedly practices claims of the '702 and '665 Patents (the "Visionlift Boomerang") have been commercially successful, and are recognized as innovative within the pool and spa industry. Accordingly, the reputational and economic advantages of a judicial decision recognizing Mr. Comeau as the true inventor of these technologies would be especially valuable.

38. In short, Defendants' violations of 35 U.S.C. § 256 have deprived Mr. Comeau— and continue to deprive Mr. Comeau—of the benefits of patent inventorship, including

ownership of the '702 and '665 patents, public recognition, vocational and business leverage, and pecuniary gain.  A favorable judicial decision would redress these harms.

## NATURE OF THE ACTION, JURISDICTION, AND VENUE

39. Plaintiff Gary Comeau brings this action for Correction of Patent Inventorship under 35 U.S.C. § 256.

40. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the action arises under the patent laws of the United States.

41. The Court has personal jurisdiction over Defendant SMP pursuant to 35 U.S.C. § 293.  Assignment documents recorded at the United States Patent and Trademark Office ("USPTO") on June 19, 2017 purport to assign the '823 Patent to "Specialty Metal Products Inc.," but omit the leading "SMP" in the name of Defendant "*SMP* Specialty Metal Products Inc."  On information and belief, the entity "Specialty Metal Products Inc." (without the leading "SMP") does not exist, and the omission of the leading "SMP" was a typographical error.  Accordingly, on information and belief, Defendant SMP is purportedly a current assignee of the '823 Patent.  SMP does not reside in the United States, and has not filed a written designation identifying the name and address of a person residing within the United States on whom may be served process or notice of proceedings affecting the '823 Patent or rights thereunder.

42. In the alternative, the Court has personal jurisdiction over Defendant SMP pursuant to Fed. R. Civ. P. 4(k)(2).  SMP has purposely directed its activities at residents of the United States, the claims herein arise out of SMP's activities in and contacts with the United States, and the assertion of personal jurisdiction is reasonable and fair.  For instance, (1) SMP engaged registered U.S. patent agents at Bereskin & Parr LLP to file and prosecute multiple patent applications before the USPTO, to submit detailed documentation and disclosures

supporting the patent applications, and ultimately obtain the '823, 702, and '665 Patents, throughout which process and continuing to today SMP had a duty of candor the USPTO; (2) SMP sells certain of its products directly to U.S. consumers; (3) SMP supplies its hot tub cover lifter products, including those purportedly covered by the patents at issue here, to consumers in the Eastern United States through its exclusive reseller, Hot Tub Products, LLC; (4) SMP supplies its hot tub cover lifter products, including those purportedly covered by the patents at issue here, elsewhere in the United States through numerous non-exclusive resellers; (5) SMP routinely attends trade shows, such as the thrice-annual International Pool, Spa, and Patio Expo in the United States to advertise its products, including those purportedly covered by the patents at issue here; (6) SMP maintains a shipping address at 210 South Eighth Street, Lewiston, New York 14092 for delivery of its hot tub cover lifters and components thereof, including those purportedly covered by the patents at issue here; (7) SMP employees, including John Cunerty, use company business cards that reflect the Lewiston, New York shipping address; and (8) SMP purchases components and materials for its hot tub cover lifters, including those purportedly covered by the patents at issue here, from suppliers in the United States.

43.     The Court has personal jurisdiction over Defendant Ontario Ltd pursuant to 35 U.S.C. § 293.  Assignment records recorded at the USPTO on November 3, 2017 purport to indicate that, in addition to Defendant SMP, Defendant Ontario Ltd is a current assignee of the '823 Patent.  Accordingly, on information and belief, in addition to Defendant SMP, Defendant Ontario Ltd is purportedly a current assignee of the '823 Patent.  Ontario Ltd does not reside in the United States, and has not filed a written designation identifying the name and address of a person residing within the United States on whom may be served process or notice of proceedings affecting the '823 Patent or rights thereunder.

44. The Court has personal jurisdiction over Defendant John Cunerty pursuant to 35 U.S.C. § 293. According to USPTO records, John Cunerty is purportedly the current assignee of the '702 and '665 Patents. John Cunerty does not reside in the United States, and has not filed a written designation identifying the name and address of a person residing within the United States on whom may be served process or notice of proceedings affecting the '702 Patent, the '665 Patent, or rights thereunder.

45. In the alternative, the Court has personal jurisdiction over Defendant John Cunerty pursuant to Fed. R. Civ. P. 4(k)(2). John Cunerty has purposely directed his activities at residents of the United States, the claims herein arise out of his activities in and contacts with the United States, and the assertion of personal jurisdiction over John Cunerty is reasonable and fair. For instance, (1) John Cunerty engaged registered U.S. patent agents at Bereskin & Parr LLP to file and prosecute multiple patent applications before the USPTO, to submit detailed documentation and disclosures supporting the patent applications, and ultimately obtain the '823, '702, and '665 Patents, throughout which process and continuing to today John Cunerty had a duty of candor to the USPTO; (2) during prosecution of '823, '702, and '665 Patents, John Cunerty submitted sworn affidavits to the USPTO attesting to the accuracy of the applications; (3) John Cunerty personally attends trade shows, such as the thrice-annual International Pool, Spa, and Patio Expo in the United States to advertise SMP's products, including those purportedly covered by the patents at issue here; and (4) John Cunerty uses company business cards that list his business address as 210 South Eighth Street, Lewiston, New York 14092.

46. Venue is proper in this District pursuant to 28 U.S.C. § 1391.

**COUNT I – CORRECTION OF INVENTORSHIP OF U.S. PATENT NO. 9,708,823**

47. Plaintiff Gary Comeau incorporates the above paragraphs by reference.

48. The '823 Patent, attached as Exhibit 1, issued on July 18, 2017 and is titled "Lift Assembly and Spa Including the Same."

49. The '823 Patent lists on its face as inventors both John Joseph Cunerty and Gary Mark Comeau.

50. Defendant SMP and Defendant Ontario Ltd are purportedly the current assignees of the '823 Patent.

51. As detailed herein, all claims of the '823 Patent were conceived and reduced to practice exclusively by Plaintiff Gary Comeau. John Cunerty did not contribute to the conception of or reduction to practice of any claim of the '823 Patent.

52. The naming of John Cunerty as an inventor of the '823 Patent is erroneous, and occurred without any deception or fraud on the part of Gary Comeau.

53. Accordingly, the '823 Patent should be corrected pursuant to 35 U.S.C. § 256 to identify Gary Comeau as the sole inventor of the '823 Patent.

**COUNT II – CORRECTION OF INVENTORSHIP OF U.S. PATENT NO. 10,273,702**

54. Plaintiff Gary Comeau incorporates the above paragraphs by reference.

55. The '702 Patent, attached as Exhibit 2, issued on April 30, 2019 and is titled "Lift Assembly for a Spa Cover."

56. The '702 Patent lists on its face John Joseph Cunerty as its sole inventor.

57. John Cunerty is purportedly the current assignee of the '702 Patent.

58. As detailed herein, all claims of the '702 Patent were conceived and reduced to practice exclusively by Plaintiff Gary Comeau. John Cunerty did not contribute to the conception or reduction to practice of any claim of the '702 Patent.

59. The naming of John Cunerty as an inventor of the '702 Patent and the failure to name Gary Comeau as the sole inventor of the '702 Patent were erroneous, and occurred without any knowledge, deception, or fraud on the part of Gary Comeau.

60. As the sole inventor of the '665 Patent, Mr. Comeau is also the rightful sole assignee, or in the alternative at least an assignee, of the '665 Patent.

61. Accordingly, the '702 Patent should be corrected pursuant to 35 U.S.C. § 256 to identify Gary Comeau as the sole inventor and owner of the '702 Patent.

62. In the alternative, if the Court determines that Gary Comeau is not the sole inventor of all claims of the '702 Patent, he at a minimum contributed substantially to the claimed subject matter, and should be added as a joint inventor and co-owner of the '702 Patent.

**COUNT III – CORRECTION OF INVENTORSHIP OF U.S. PATENT NO. 10,662,665**

63. Plaintiff Gary Comeau incorporates the above paragraphs by reference.

64. The '665 Patent, attached as Exhibit 3, issued on May 26, 2020 and is titled "Lift Assembly for a Spa Cover."

65. The '665 Patent lists on its face John Joseph Cunerty as its sole inventor.

66. The '665 Patent issued from U.S. Patent App. No. 16/299,259, which is a continuation of U.S. Pat. App. No. 16/173,752, which issued as the '702 Patent. Accordingly, the '665 and '702 Patents share a common specification.

67. John Cunerty is purportedly the current assignee of the '665 Patent.

68. As detailed herein, all claims of the '665 Patent were conceived and reduced to practice exclusively by Plaintiff Gary Comeau. John Cunerty did not contribute to the conception or reduction to practice of any claim of the '665 Patent.

69. The naming of John Cunerty as an inventor of the '665 Patent and the failure to name Gary Comeau as the sole inventor and owner of the '665 Patent were erroneous, and occurred without any knowledge, deception, or fraud on the part of Gary Comeau.

70. As the sole inventor of the '665 Patent, Mr. Comeau is also the rightful sole assignee, or in the alternative at least an assignee, of the '665 Patent.

71. Accordingly, the '665 Patent should be corrected pursuant to 35 U.S.C. § 256 to identify Gary Comeau as the sole inventor and owner of the '665 Patent.

72. In the alternative, if the Court determines that Gary Comeau is not the sole inventor of all claims of the '665 Patent, he at a minimum contributed substantially to the claimed subject matter, and should be added as a joint inventor and co-owner of the '665 Patent.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Gary Comeau prays for the following relief:

73. An order of correction naming Gary Comeau as the sole inventor of the '823 Patent.

74. An order of correction naming Gary Comeau as the sole inventor of the '702 Patent, or, in the alternative, an order of correction naming Gary Comeau as a joint inventor of the '702 Patent.

75. A declaration that the entire right, title, and interest in and to the '702 Patent and all related patents and applications belongs to Gary Comeau, or in the alternative, a declaration that Gary Comeau is a joint owner of the '702 Patent and all related patents and applications.

76. An order of correction naming Gary Comeau as the sole inventor of the '665 Patent, or, in the alternative, an order of correction naming Gary Comeau as a joint inventor of the '665 Patent.

77. A declaration that the entire right, title, and interest in and to the '665 Patent and all related patents and applications belongs to Gary Comeau, or in the alternative, a declaration that Gary Comeau is a joint owner of the '665 Patent and all related patents and applications.

78. Attorney fees under 28 U.S.C. § 285.

79. Reasonable costs, fees, expenses, and interest, as provided by law.

80. Any and all other monetary or equitable relief as this Court deems just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff Gary Comeau hereby demands a trial by jury on all issues so triable.

Dated: December 28, 2020

By: */s/ Charles B. Molster, III*
Charles B. Molster, III Va. Bar No. 23613
LAW OFFICES OF CHARLES B. MOLSTER, III PLLC
2141 Wisconsin Avenue, N.W., Ste. M
Washington, D.C. 20007
(703) 346-1505
cmolster@molsterlaw.com

Andrew D. Gish (*pro hac* forthcoming)
NOROOZI PC
1250 Broadway, Floor 36
New York, NY 10001
(212) 328-1164
andrew@noroozipc.com

Kayvan B. Noroozi (*pro hac* forthcoming)
NOROOZI PC
11601 Wilshire Boulevard
Suite 2170
Los Angeles, CA 90025
(310) 975-7074
kayvan@noroozipc.com

*Counsel for Plaintiff*