## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

GARY COMEAU,

                *Plaintiff,*

v.

SMP SPECIALTY METAL PRODUCTS
INC., 1140398 ONTARIO LTD., AND
JOHN CUNERTY,

                *Defendants.*

Case No. 2:20-cv-00646-RGD-LRL

## PLAINTIFF GARY COMEAU'S
## <u>OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>

**Table of Contents**

INTRODUCTION ........................................................................................................... 1

LEGAL STANDARD .................................................................................................... 4

    I.   Facial Challenges to Standing in a Motion to Dismiss .................................... 4

    II.   Motion to Dismiss Ontario Ltd for Lack of Personal Jurisdiction ................... 5

ARGUMENT ................................................................................................................. 6

    I.   Plaintiff Has Pleaded Three Independent Injuries That Confer Standing ....................... 6

        A.   Plaintiff Has Adequately Pleaded Injury to Professional Prospects ......................... 7

            1.   Harm Within the Broader Mechanical Industry ................................... 7

            2.   Harm Within the Spa Industry ........................................................... 9

               i.   Plaintiff Has Pleaded Sufficient Factual Support ................................. 9

               ii.   The Pleaded Harm is Plausible, Actual, and Imminent ................................. 13

               iii.   Defendants' Only Case Law Confirms That Dismissal Is Inappropriate ......... 15

        B.   Plaintiff Has Pleaded Deprivation of Ownership of the '702 and '665 Patents ....... 17

    II.   Defendants' False Affidavit Generates a Dispute of Fact That Precludes Dismissal of
        Ontario Ltd ................................................................................................. 24

CONCLUSION ............................................................................................................. 27

## Table of Authorities

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 8

*Banner Life Ins. Co. v. Bonney*, Case No. 2:11-cv-198,
   2011 U.S. Dist. LEXIS 121805 (E.D. Va. Oct. 21, 2011) (Doumar, J.)................................ 21

*Beck v. McDonald*, 848 F.3d 262 (4th Cir. 2017) ...................................................... 4, 5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................. 8, 15

*C.I. Covington Fund Inc. v. White*, 2000 CarswellOnt 4680
   (Can. Ont. Super. Ct. J., 2000)........................................................................ 17, 19, 20

*Colon Health Ctrs. of Am.*, LLC v. Hazel, 733 F.3d 535 (4th Cir. 2013).................................... 21

*Comstock Canada v. Electec Ltd.*, 38 CPR (3d) 29,
   45 FTR 241 (FCTD 1991) (attached as Ex. 3) .................................................. 18, 19

*Czarnik v. Illumina, Inc.*, 437 F. Supp. 2d 252 (D. Del. 2006)................................ 13, 15

*De Sole v. United States*, 947 F.2d 1169 (4th Cir. 1991)................................................ 4

*Electronics for Imaging, Inc. v. Coyle*, 340 F.3d 1344 (Fed. Cir. 2003) .............................. 6

*Elsayed v. Family Fare LLC*, No. 1:18-cv-1045,
   2020 U.S. Dist. LEXIS 27064 (M.D.N.C. Feb. 18, 2020)........................................ 23

*Evans v. B.F. Perkins Co.*, 166 F.3d 642 (4th Cir. 1999) ............................................ 5

*Fishel v. Mich. State Univ.*, No. 1:15-cv-50,
   2016 U.S. Dist. LEXIS 159550 (W.D. Mich. July 19, 2016)................................ 17

*Helbig v. Oxford Warehousing Ltd.*, 51 OR (2d) 421, 6 CPR (3d) 460
   (Ontario Supreme Court, Court of Appeal 1985) (attached as Ex. 5)...................................... 21

*Kamdem-Ouaffo v. PepsiCo Inc.*, 657 F. App'x 949 (Fed. Cir. 2016)........................ 11, 14, 16, 17

*Kerns v. United States*, 585 F.3d 187 (4th Cir. 2009).................................................... 4

*Mattison v. Willis*, No. 4:17-cv-134, 2018 U.S. Dist. LEXIS 226657
   (E.D. Va. Dec. 6, 2018) (Doumar, J.) ............................................................ 5

*Nature-Control Technologies Inc. v. Li*, 2014 BCSC 1868
   (British Columbia Supreme Court, 2014) (attached as Ex. 1) ...................................... 18, 19, 22

*Pedersen v. Geschwind*, 141 F. Supp. 3d 405 (D. Md. 2015)........................ 11, 14, 15, 16

*Questor Technology Inc v. Stagg*, 2020 ABQB 3
    (Alberta Court of Queen's Bench, Jan. 10, 2020) (attached as Ex. 2) ............................... 18, 22

*Shukh v. Seagate Tech., LLC*, No. 10-404, 2011 U.S. Dist. LEXIS 33924
    (D. Minn. Mar. 30, 2011)........................................................................................................ 13

*Shukh v. Seagate Tech., Ltd. Liab. Co.*, 803 F.3d 659 (Fed. Cir. 2015) ........................ 8, 9, 11, 14

*Shupe v. DBJ Enters., LLC*, No. 1:14-cv-308,
    2015 U.S. Dist. LEXIS 22284 (M.D.N.C. Feb. 25, 2015)................................................... 22, 23

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) .................................................................. 14

*Telles v. Seaworld Parks & Entm't LLC*, No. 4:20-cv-6,
    2020 U.S. Dist. LEXIS 162615 (E.D. Va. Sep. 3, 2020) (Doumar, J.) ..................................... 4

*Tobin v. De Lanauze*, 2000 CarswellQue 2393
    (Cour Supérieure du Québec, 2000) (attached as Ex. 4)......................................................... 19

*Tom Tom, Inc. v. AOT Sys. GmbH*, 893 F. Supp. 2d 785 (E.D. Va. 2012) (Ellis, J.) .............. 6, 27

*Trinity Outdoor, L.L.C. v. City of Rockville*, 123 F. App'x 101 (4th Cir. 2005)................. 5, 12, 14

*United States v. Chartis Ins. Agency, Inc.*,
    834 F. Supp. 2d 459 (E.D. Va. 2011) (Doumar, J.) ............................................................ 4, 23

*Zaklit v. Glob. Linguist Sols.*, LLC, 53 F. Supp. 3d 835
    (E.D. Va. 2014) (Cacheris, J.)............................................................................................. 8, 14

**Statutes**

35 U.S.C. § 293............................................................................................................................ 24

1

# INTRODUCTION

Contrary to Defendants' colorful portrayal—which Plaintiff disputes, but which is also irrelevant at the pleading stage—Gary Comeau brought this action not to inflict pain but to relieve the concrete harm to both his professional prospects and ownership rights caused by the false inventorship of U.S. Patent Nos. 9,708,823 ("the '823 Patent"); 10,273,702 ("the '702 Patent"); and 10,662,665 ("the '665 Patent") (collectively the patents-in-suit).  As Defendants' proffer of a false affidavit from Defendant Cunerty's wife, May Anis, demonstrates, it is in fact Defendants who will stop at nothing to "twist the knife" in Mr. Comeau.  Specifically, in an attempt to defeat the Court's personal jurisdiction over Defendant Ontario Ltd, Ms. Anis swore under penalty of perjury that Defendant SMP is "the sole owner of the '823 Patent," to the exclusion of Defendant Ontario Ltd.  (Dkt. No. 22-1, ¶¶ 5-6.)  But an assignment document filed with the Canadian Intellectual Property Office in 2018—which has not been superseded by any other agreement on record—explicitly assigns an ownership interest in the '823 patent to Ontario Ltd.  At a minimum, this false affidavit generates a dispute of fact that defeats Defendants' Motion to Dismiss with respect to personal jurisdiction over Ontario Ltd.

Defendants' arguments with respect to standing—which rely on similarly inaccurate characterizations of the law—are equally deficient.  At the outset, Defendants fail to acknowledge to the Court that, because they raise a mere facial challenge to standing, their Motion must be evaluated under the stringent standard of Rule 12(b)(6), not 12(b)(1).  But under either standard, Plaintiff's Complaint pleads at least three independent harms sufficient to confer standing: (1) harm to Mr. Comeau's professional prospects within the mechanical devices industry, where he has been unable to find adequate employment in the three years since his departure from SMP (Compl. ¶ 34); (2) harm to Mr. Comeau's professional prospects within the

narrower spa industry, where he has been searching for positions for more than three months (Compl. ¶ 35); and (3) deprivation of Mr. Comeau's ownership interest in the '702 and '665 Patents (Compl. ¶ 28).

First, Defendants virtually ignore harm within the broader mechanical industry, arguing only in a brief footnote that such harm is "irrelevant" because participants in the mechanical industry supposedly do not value cover lifter patents.  But, given that cover lifters are prototypical mechanical devices, this supposition defies common sense.  Standing alone, this unrebutted allegation of harm confers standing with respect to all of the patents-in-suit and defeats Defendants' Motion in its entirety with respect to standing.

Second, even if harm within the broader mechanical industry were insufficient—which it is not—Plaintiff has adequately pleaded harm within the spa industry.  Contrary to Defendants' one-line analysis asserting that such allegations are "conclusory," Plaintiff has alleged in detail that within the field of mechanical products in general, and within the spa industry specifically, patent inventorship generates employment and business opportunities, increases potential compensation, and leads to promotions.  (Compl. ¶ 30.)  These benefits are magnified here, because the patented products have been very commercially successful.  (Compl. ¶ 37.)  These benefits are particularly critical to Gary Comeau's professional prospects because he has no formal engineering education or title to convey his skillset, and because Defendants have actively disparaged his skillset within the industry.  (Compl. ¶¶ 31-32, 36.)  This false inventorship is actively depriving Gary Comeau of these professional benefits—and the concomitant economic rewards—in his ongoing search for employment.  (Compl. ¶ 35.)  Defendants fail to identify a single precedent dismissing a complaint that pleaded such professional harms.  Rather, in all three cases that Defendants cite in support of their Motion, the

Court dismissed the case because the Complaint failed to ***even attempt*** to plead professional harm.

Defendants' parallel assertion that Plaintiff's allegations are "implausible"—simply because ***they believe*** that Mr. Comeau could not have been rejected from any employment opportunities during the ten days that elapsed between the start of his job search and the filing of the Complaint—is based on an equally distorted view of the law.  There is no requirement that an inventor compound harm by awaiting rejection letters before filing suit.  Rather, the law recognizes both "actual" and "imminent" harm, and accordingly the Federal Circuit has held that harm to job "prospects" is sufficient to establish standing.  Moreover, even if the loss of specific job opportunities was a prerequisite to standing, Plaintiff has plausibly alleged such harm.  Defendants' supposition to the contrary does not overrule the commonsense reality that, especially in small industries, insiders can quickly learn which opportunities are foreclosed to them even absent formal rejection letters.  That plausibility is all that is required at the pleading stage.

Again, standing alone, this harm confers standing with respect to all three patents-in-suit, and defeats Defendants' Motion in its entirety with respect to standing.

Third, even if Plaintiff had failed to plead ***any*** cognizable professional harm, Plaintiff has adequately pleaded deprivation of ownership of the '702 and '665 Patents.  In arguing to the contrary, Defendants rely on a single Canadian case to claim there exists a blanket rule that corporate officers are always required to assign their patent rights to the corporation.  No such rule exists.  In Canada, the default rule is that employees—even senior employees—retain their patent rights.  Departure from the default rule is a fact-intensive inquiry that requires a court to "consider the nature and context" of the professional relationship by weighing at least eight

1

contextual factors.  This complex, fact-based dispute is not suitable for resolution on the

pleadings.  Even if it were, under the facts pleaded at least half of the factors favor Mr.

Comeau's ownership, and only one—his position as a director—arguably may not.  Nothing

more is required at the pleading stage.  Standing alone, this harm confers standing with respect to

the '702 and '665 Patents and defeats Defendants' Motion with respect to those patents.

## LEGAL STANDARD

### I.     Facial Challenges to Standing in a Motion to Dismiss

Under Fed. R. Civ. P. 12(b)(1), "[a] defendant may challenge subject-matter jurisdiction

in one of two ways: facially or factually." *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017)

(citing *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)).  "In a facial challenge, the

defendant contends 'that a complaint fails to allege facts upon which subject matter jurisdiction

can be based.'"  *Id*.  "Accordingly, the plaintiff is 'afforded the same procedural protection as

she would receive under a Rule 12(b)(6) consideration,' wherein 'the facts alleged in the

complaint are taken as true,' and the defendant's challenge 'must be denied if the complaint

alleges sufficient facts to invoke subject matter jurisdiction.'"  *Id*.  That is, a facial challenge

"tests the legal sufficiency of a complaint and should be denied unless 'it appears beyond doubt

that the plaintiff can prove no set of facts in support of his claim which would entitle him to

relief.'"  *United States v. Chartis Ins. Agency, Inc.*, 834 F. Supp. 2d 459, 461 (E.D. Va. 2011)

(Doumar, J.) (quoting *De Sole v. United States*, 947 F.2d 1169, 1177 (4th Cir. 1991)).  In short,

where a Defendant raises a facial challenge to standing, "[t]he threshold to survive a motion to

dismiss is a low one." *Id* (quotation omitted); *Telles v. Seaworld Parks & Entm't LLC*, No. 4:20-

cv-6, 2020 U.S. Dist. LEXIS 162615, at *12 (E.D. Va. Sep. 3, 2020) (Doumar, J.) ("a motion to

dismiss under Rule 12(b)(6) should be granted only in 'very limited circumstances.'").

1

By contrast, "[i]n a factual challenge, the defendant argues 'that the jurisdictional allegations of the complaint [are] not true,' providing the trial court the discretion to 'go beyond the allegations of the complaint and . . . determine if there are facts to support the jurisdictional allegations.'" *Beck*, 848 F.3d at 270.  But even under this standard, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presume that general allegations embrace those specific facts that are necessary to support the claim.'" *Trinity Outdoor, L.L.C. v. City of Rockville*, 123 F. App'x 101, 105 (4th Cir. 2005). Moreover, even "[a] Rule 12(b)(1) motion to dismiss should be granted 'only if the material jurisdictional facts are not in dispute <u>and</u> the moving party is entitled to prevail as a matter of law.'" *Mattison v. Willis*, No. 4:17-cv-134, 2018 U.S. Dist. LEXIS 226657, at *11-12 (E.D. Va. Dec. 6, 2018) (Doumar, J.) (citing *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999)) (emphasis added).

Here, with regard to standing, Defendants' motion challenges only the ***adequacy*** of the allegations in the Complaint.  (*E.g.*, Motion at 7 ("these allegations . . . are not sufficient to confer standing"), 8 ("These 'naked assertion[s]' . . . are not sufficient to establish standing."), 9 ("Comeau, by contrast, has alleged no such facts in this case."), 9 ("any contention that Comeau will suffer pecuniary consequences from not being the sole inventor of the '823 Patent is . . . not 'concrete and particularized' as required by law").)  Defendants' Motion does not introduce evidence to contest ***veracity*** of Plaintiff's standing allegations.  Accordingly, Defendants' Motion to Dismiss for lack of standing presents a facial challenge that must be denied unless it can surmount the high bar of Rule 12(b)(6).

## II.      Motion to Dismiss Ontario Ltd for Lack of Personal Jurisdiction

"To survive threshold dismissal under Rule 12(b)(2), the plaintiff 'need only make a *prima facie* showing that defendants are subject to personal jurisdiction.'" *Tom Tom, Inc. v.*

*AOT Sys. GmbH*, 893 F. Supp. 2d 785, 787 (E.D. Va. 2012) (Ellis, J.) (citing *Electronics for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003)).  Where a defendant raises a factual dispute with regard to personal jurisdiction, "a district court may resolve a personal jurisdiction question on the basis of 'affidavits and other written materials'" presented by the parties.  *Id*.  But, as Defendants acknowledge, "[t]o the extent there are genuine factual disputes . . . presented to the Court, they are resolved in the plaintiff's favor."  Motion at 6; *Tom Tom*, 893 F. Supp. 2d at 787 ("a 'district court must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts . . . in the plaintiff's favor.'").  Here, with regard to personal jurisdiction over Ontario Ltd, Defendants have raised a factual challenge by introducing evidence—the false affidavit of May Anis and its attachments (Dkt. No. 22-1)—controverting Plaintiff's allegation that Ontario Ltd purports to hold an ownership interest in the '823 Patent.  Accordingly, Plaintiff is free to introduce additional evidence contradicting Defendants' assertions, and any dispute must be resolved in Plaintiff's favor.

## <u>ARGUMENT</u>

### I.   **Plaintiff Has Pleaded Three Independent Injuries That Confer Standing**

Plaintiff has adequately pleaded three independent injuries sufficient to defeat a challenge to standing at the pleading stage.  First and second, with respect to all three patents-in-suit, Plaintiff has pleaded harm to his professional reputation and prospects in <u>both</u> the mechanical devices industry in general <u>and</u> the spa industry[1] in particular.  Each of these allegations standing alone entirely defeats Defendants' motion to dismiss for lack of standing.  Third, Plaintiff has pleaded that incorrect inventorship has deprived him of ownership of the '702 and '665 Patents.

---

[1] This Brief uses the term "spa industry" synonymously with "pool and spa industry."

This allegation provides another independent basis for denying Defendants' motion to dismiss for lack of standing with respect to the '702 and '665 Patents.

### A.  Plaintiff Has Adequately Pleaded Injury to Professional Prospects

Plaintiff's Complaint devotes three pages and 11 paragraphs to detailing factual allegations of professional harm caused by the incorrect inventorship of the patents-in-suit. (Compl. ¶¶ 27, 29-38.)  Plaintiff alleges that incorrect inventorship has diminished his professional reputation and prospects in <u>both</u> the mechanical device industry in general <u>and</u> the spa industry in particular.  (*E.g.*, Compl. ¶ 34-35.)  Each of these harms independently confers standing.  At a minimum, Defendants' Motion to Dismiss fails because it does not meaningfully address the former.  (Motion at n.4.)  Further, with regard to harms within the spa industry, Defendants argue that Plaintiff's standing is deficient for being "conclusory" or because its allegations of recent and imminent harms are "implausible."  But again, Defendants' position ignores the extensive allegations of the Complaint and distorts the law.

### 1.  Harm Within the Broader Mechanical Industry

Defendants do not deny that Plaintiff has raised allegations of diminished professional prospects within the broader mechanical industry.  In particular, Plaintiff alleges that incorrect inventorship has prevented him from securing adequate employment in the ***three years*** since leaving SMP:

> o "Within the . . . broader metalworking and mechanical device industries . . . [p]atent inventorship effectively acts as a seal of approval that creates job opportunities, and increases the potential compensation for such positions." (Compl. ¶ 30 (continuing to enumerate additional professional benefits of patent ownership).)

> o "After leaving SMP [in 2017], Mr. Comeau was only able to secure a position conducting and supervising manual labor in a manufacturing plant." (Compl. ¶ 34.)

o "Mr. Comeau's salary, benefits, and position are significantly less than commensurate with his level of skill and experience in the mechanical arts." *Id.*

o "Had Mr. Comeau been able to cite his sole inventorship of the '823, '702, and '665 Patents during his job search, he likely would have been able to secure more suitable, lucrative employment." *Id.*

Defendants merely argue in a brief footnote that such harms are "irrelevant" because "it is not plausible that the rejections had anything to do with the number of hot tub cover lifter patents [Mr. Comeau] was named on." (Motion at n.4.) But the need for "plausib[ility] . . . does not impose a probability requirement at the pleading stage." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"). Rather, allegations that pass muster under a Court's "judicial experience and common sense" are sufficient. *Zaklit v. Glob. Linguist Sols., LLC*, 53 F. Supp. 3d 835, 844 (E.D. Va. 2014) (Cacheris, J.) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679, (2009)). Here, Defendants' conclusion that the mechanical industry would find these undisputedly mechanical inventions— which comprise levers, springs, brackets, and bolts (Dkt. Nos. 1-1, 1-2, 1-3)—"irrelevant" simply because they are used on spas defies common sense. All mechanical devices have an application, and there is no reason to suspect that spas are somehow disfavored.

In an effort to sidestep common sense, Defendants imply that *Shukh v. Seagate Tech., Ltd. Liab. Co.*, 803 F.3d 659 (Fed. Cir. 2015) limited recognized professional harms to some unspecific but narrowly defined field of the invention. (Motion at n.4.) But *Shukh* stands for no such proposition. Rather than "only considering" harms within a narrow field, as Defendants represent (Motion at n.4), the Court merely noted as a background fact that "Dr. Shukh has been unemployed since 2009, and he seeks a job in the field of technology covered by the disputed patents." *Shukh*, 803 F.3d at 667. The Court never defined or discussed the breadth of that

"field of technology." *Id*. And the Court certainly did not suggest that plausible harms in a broader field were somehow irrelevant. *Id*. Accordingly, *Shukh* does not undermine the commonsense inference that false inventorship with respect to mechanical patents harms an inventor's professional reputation in the mechanical devices industry.[2]

Standing alone, the plausibility of the alleged harm within the mechanical industry establishes harm and defeats Defendants Motion with regard to standing for all three patents-in-suit.

## 2.   Harm Within the Spa Industry

Plaintiff has additionally pleaded harm to his professional reputation and prospects within the spa industry sufficient to establish standing. Defendants argue that this harm is either "conclusory" (Motion at 7) or "not plausible" (Motion at 8) given that—unlike his ongoing, three-year-long job search within the broader mechanical industry—Mr. Comeau's job search within the spa industry began relatively recently. Defendants are incorrect on both counts.

### i.   Plaintiff Has Pleaded Sufficient Factual Support

Rather than address Plaintiff's pages of allegations of professional harm point-by-point, Defendants simply note that language in one sentence of the Complaint tracks key Federal Circuit precedent, and summarily label the entire Complaint as "conclusory." (Motion at 7.) But the fact that Plaintiff's allegations are scrupulously consistent with controlling precedent does not somehow diminish their validity or render them conclusory. Indeed, the Complaint provides allegations at least as thorough as the complaints found sufficient in ***any case*** cited in Defendants' brief. Among other things, the Complaint alleges that:

---

[2] Even if the Defendants were correct that harms outside the narrow field of the invention were irrelevant, defining the boundaries of the field of the invention would present a prototypical question of fact unsuitable for resolution on the pleadings.

- **Patent inventorship generates professional opportunities with real economic rewards** (Compl. ¶ 30):

  - "[B]eing considered an inventor of important subject matter is a mark of success, prestige, and unique expertise." *Id.*

  - "[T]he number of patents on which an individual is named as inventor increases the perceived prestige and expertise of the individual." *Id.*

  - "Patent inventorship creates employment opportunities, and increases the potential compensation for such positions." *Id.*

  - "[C]redit for patent inventorship is a significant factor considered in evaluating whether to award promotions to employees within the industry." *Id.*

- **Plaintiff has been economically harmed by diminished professional prospects within the spa industry since December 2020**:

  - "[S]ince December 18, 2020, Mr. Comeau has sought employment within the hot tub cover lifter industry.  Mr. Comeau continues to search for such economic opportunities."  (Compl. ¶ 35.)

  - "Without credit as an inventor . . . Mr. Comeau has been unable to secure such a position." *Id.*

  - Further, Mr. Comeau's "prospects" of finding such a position in the future have diminished. *Id.*

- **This professional and economic harm to Plaintiff is particularly severe given his unique circumstances**:

  - "The reputational benefit and public recognition that flow from patent inventorship are particularly critical to Gary Comeau, because his technical ingenuity is self-taught, and he lacks a formal education in a technical field that would independently corroborate his abilities to potential employers, business partners, and customers."  (Compl. ¶ 31.)

  - "[T]he reputational benefit and public recognition that flow from patent inventorship are critical to Mr. Comeau, because his former title of General Manager of SMP does not expressly convey to potential employers, business partners, and customers Mr. Comeau's skill designing and developing new pool and spa (or other mechanical) products and technologies."  (Compl. ¶ 32.)

  - "The reputational and economic consequences of Defendants' violations of 35 U.S.C. § 256 are particularly severe because the failure to name Mr. Comeau as the sole inventor of the '823, '702, and '665 Patents appears to

1

corroborate Defendants' [false disparagement of Mr. Comeau's skillset to others within the industry]."  (Compl. ¶ 36.)

Such allegations are more than sufficient to defeat a motion to dismiss under the controlling Federal Circuit decision in *Shukh v. Seagate Tech., Ltd. Liab. Co.*, 803 F.3d 659 (Fed. Cir. 2015).  There, the Federal Circuit addressed for the first time the long-disputed question of "whether reputational injury, standing alone, may satisfy the constitutional standing requirements for a § 256 claim."  *Id*. at 663.  The Federal Circuit held that "concrete and particularized reputational injury can give rise to Article III standing . . . [f]or example, if . . . being named as an inventor on a patent would affect his employment."  *Id*.  Accordingly, because "[a] trier of fact could infer that the stronger Dr. Shukh's reputation as an inventor, the more likely he is to be hired," and therefore that "Dr. Shukh's employment prospects would improve if the inventorship of the disputed patents was corrected," the Court reversed the district court decision granting summary judgment dismissing Dr. Shukh's inventorship claims.  *Id*. at 667.  Following *Shukh*, it is well established that such "recognition; vocational leverage; [and] pecuniary gain . . . are concrete and fairly traceable to the named inventorship on a patent" such that "deprivation of such named inventorship is . . . an injury that courts can redress."  *Pedersen v. Geschwind*, 141 F. Supp. 3d 405, 417 (D. Md. 2015); *Kamdem-Ouaffo v. PepsiCo Inc.*, 657 F. App'x 949, 954 (Fed. Cir. 2016) ("if the claimed inventor can show that being named as an inventor on a patent would affect his employment, the alleged reputational injury likely has an economic component sufficient to demonstrate Article III standing") (quoting *Shukh*, 803 F.3d at 663.  Like Dr. Shukh, Plaintiff alleges that the stronger his reputation as an inventor, the more likely he would be hired for a suitable position, and therefore incorrect inventorship has harmed his job prospects.  (Compl. ¶¶ 27-38.) Accordingly, Defendants' motion should be denied under the stringent Rule 12(b)(6) standard applicable to this facial challenge.

1

Defendants attempt to distinguish *Shukh* by conflating the evidentiary standard for a motion for summary judgment—applicable in *Shukh*—with the evidentiary standard for a motion to dismiss—applicable here.  Specifically, Defendants assert that Plaintiff's Complaint is inadequate relative to two items of **evidence** that Dr. Shukh presented: (1) "evidence that he had submitted 'many job applications'"; and (2) "evidence that employers in the field 'gave financial rewards . . . based on an employee's number of named patents" and consequently that Dr. Shukh had received a negative performance review for obtaining too few patents.  (Motion at 8-9.)  In the first instance, this comparison is inappropriate.  The court in *Shukh* was evaluating the existence of a genuine dispute of material fact in a motion for summary judgment filed after years of litigation.  As such, the plaintiff provided more detailed evidence than is required at the pleading stage.  Moreover, even this false equivalence fails to support Defendants' position, because the two items of evidence that Defendants cite directly parallel two of the allegations pleaded in Plaintiff's complaint.  Namely, (1) Gary Comeau's active job search within the spa industry is similarly impaired by incorrect inventorship (Compl. ¶ 35); and (2) "[p]atent inventorship . . . increases . . . potential compensation" and "is a significant factor considered in evaluating whether to award promotions to employees within the industry" (Compl. ¶ 30).  Particularly given that allegations at this stage are considered to "embrace those specific facts that are necessary to support the claim," *Trinity Outdoor*, 123 F. App'x at 105, this is more than sufficient.

In fact, the operative **pleading** in *Shukh*—which previously survived a motion to dismiss on standing grounds—alleged far less factual support than Plaintiff's Complaint here.  Rather, in an omnibus complaint alleging numerous causes of action, Dr. Shukh pleaded only that "he ha[d] difficulty finding new employment," which he attributed **not to incorrect inventorship**, but to

1

"'black-listing' and rumors instigated by [the defendant]." *Shukh v. Seagate Tech., LLC*, No. 10-404, 2011 U.S. Dist. LEXIS 33924, at *19 (D. Minn. Mar. 30, 2011).  Interpreting the complaint in the light most favorable to the plaintiff—as is appropriate in evaluating a motion to dismiss—the Court reasoned that "it is also logical that omission from important patents could affect his ability to get a new job." *Id*. at 19.  "Thus, the Court [found] Shukh ha[d] standing to challenge inventorship." *Id*.  Plaintiff's Complaint here, which does not require the Court to read between the lines to infer harm, must also survive.

This limited pleading requirement is consistent with the line of opinions addressing standing at the motion to dismiss stage leading up to the Federal Circuit's opinion in *Shukh*.  For instance, in *Czarnik v. Illumina, Inc.*, 437 F. Supp. 2d 252 (D. Del. 2006), the District of Delaware held that a bare allegation that incorrect inventorship had hindered a plaintiff's ability to theoretically "join another [unspecified] start-up and get another few hundred thousand shares of stock," was sufficient.  *Id*. at 256.  Plaintiff was not required to enumerate a litany of employment rejections; it was sufficient that he "alleg[ed] more than injury to his pride; he also allege[d] pecuniary consequences that flow from the injury to his reputation." *Id*. at 257.  Similarly here, Plaintiff has alleged not mere injuries to his pride, but actual economic harm, and has therefore surpassed the pleading requirements.

### ii.  The Pleaded Harm is Plausible, Actual, and Imminent

Defendants alternatively contend that the economic harm pleaded in the Complaint is "not plausible" because ***they suspect*** that Mr. Comeau could not have actually been rejected from employment during the ten days that elapsed between the beginning of his job search within the spa industry and the filing of the Complaint.  (Motion at 8.)  This supposition fails on at least two levels.

1

First, there is no requirement that Mr. Comeau must compound the harm to himself by awaiting the receipt of rejection letters before filing suit.  It is black letter law that both actual and "imminent" harm suffice to confer standing.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) ("a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is . . . 'actual *or imminent*'") (emphasis added).  Consistent with this principle, courts recognize that allegations of diminished job ***prospects***—rather than specific instances of lost employment—are sufficient to confer standing.  *See, e.g.*, *Kamdem-Ouaffo*, 657 F. App'x at 954 (noting that pleading a "loss of employment *prospects*" would suffice) (emphasis added); *Shukh*, 803 F.3d at 667 (Fed. Cir. 2015) ("a trier of fact could conclude that Dr. Shukh's employment *prospects* have been harmed by the impact of his alleged omission from the disputed patents") (emphasis added); *Pedersen*, 141 F. Supp. 3d at 417 (D. Md. 2015) ("recognition; vocational *leverage*; [and] pecuniary gain") (emphasis added).  Accordingly, Plaintiff's allegation that he is actively disadvantaged in an ongoing job search—even if that job search began shortly before filing the Complaint—is both an active and imminent injury sufficient to confer standing.

Second, even if Mr. Comeau were required to lose specific job opportunities before filing suit—which he is not—the pleadings plausibly allege such harm.  Courts evaluate plausibility using "judicial experience and common sense." *Zaklit*, 53 F. Supp. 3d at 844 (quoting *Ashcroft*, 556 U.S. at 679).  And it is consistent with common sense that, in small communities like the spa industry—where employment inquiries are often made to known contacts or through informal channels—an industry insider would learn quickly which job opportunities are foreclosed to him without formal rejection letters, and in some instances without formally applying. *See Trinity* Outdoor, 123 F. App'x at 105 ("on a motion to dismiss we 'presume that general allegations embrace those specific facts that are necessary to support the claim.'").  It further stands to

reason that the time frame may be further accelerated here given Plaintiff's allegations that Defendants have "falsely disparaged Mr. Comeau's skillset and character to third parties within the pool and spa industry." (Compl. ¶ 36.) Defendants' self-serving ***assumption*** that the absence of specifically enumerated rejections renders it ***unlikely*** that Plaintiff had already lost opportunities does not render the allegation ***implausible*** under the law. *Twombly*, 550 U.S. at 556 (the *plausibility* standard "does not impose a *probability* requirement at the pleading stage . . . a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable") (emphasis added); *see Czarnik*, 437 F. Supp. 2d at 256 (finding the allegation that the plaintiff/inventor had been unable to "join another [unspecified] start-up" sufficient to confer standing). This plausibility is all that is required to defeat Defendants' Motion.

### iii. Defendants' Only Case Law Confirms That Dismissal Is Inappropriate

Tellingly, Defendants devote the bulk of their argument to attempting to distinguish *Shukh*, but do not offer substantive discussion of any precedent that might affirmatively support their positions. Instead, Defendants rely on passing "*see*" citations to, and out-of-context quotations from, three cases to imply that other Courts have dismissed comparably detailed complaints. But none have. In all three of Defendants' cited cases, the Court dismissed the operative complaint not because allegations of harm to professional prospects were considered ***implausible or insufficiently detailed***, but because they were ***not raised at all***.

Defendants cite *Pedersen v. Geschwind*, 141 F. Supp. 3d 405 (D. Md. 2015) to suggest that dismissal is appropriate where a Plaintiff's complaint fails to enumerate specific job opportunities lost due to incorrect inventorship. (Motion at 8.) That was not the Court's holding. Rather, *Pedersen* addressed the unusual situation of a named inventor who felt he had

***not*** made an inventive contribution to a patent, and therefore wished to be ***removed*** as an inventor.  *Pedersen*, 141 F. Supp. 3d at 413.  Pedersen contended that he had standing because the incorrect inventorship vaguely diminished "his status as a fair and honest academician" and might cause subordinates to view him as a "boss with a penchant for taking credit where credit is not due."  *Id*. at 416.  Explaining that this theory "would turn [patent] law on its head, redefining a patent not as a badge of professional and intellectual honor but as an albatross around the neck," the Court found that "Plaintiff ha[d] failed to allege an injury redressable through . . . section 256."  *Id*. at 418.  Thus, rather than granting dismissal because the plaintiff failed to allege specific instances of employment rejections, the court dismissed because the plaintiff failed to allege ***any cognizable harm***.  *Id*.  By contrast, Plaintiff here has pleaded detailed allegations of professional harm precluding dismissal.

Similarly, in *Kamdem-Ouaffo v. PepsiCo Inc.*, 657 F. App'x 949 (Fed. Cir. 2016), the plaintiff failed to allege ***any*** economic harm accompanying his supposed reputational interest.  Rather, the complaint raised a solitary, "bare assertion that 'Plaintiff sustains and/or *might sustain* damages in terms of the loss of the ownership, inventorship, recognition, and the *honor* for his . . . Intellectual Property.'"  *Id*. at 954 (emphasis on "might sustain" in original).  Among other deficiencies, this allegation (1) fails to allege the factual underpinnings of economic harm; (2) fails to assert economic harm at even a conclusory level; and (3) only alleges that harm "might" occur.  Accordingly, when the Federal Circuit criticized Kamdem-Ouaffo's complaint for pleading a reputational injury that was "not 'concrete and particularized,'" it did not somehow suggest that a complaint providing several pages of detailed allegations of professional harm—like Plaintiff's here—should be considered deficient.  *Id*. at 954.  To the contrary, the Federal Circuit held that allegations of reputational injury "tied to economic consequences, such

as loss of employment prospects" are sufficient to defeat a motion to dismiss.  *Id*.  Unlike

Kamdem-Ouaffo, Plaintiff has alleged more than ***possible*** harm to his ***honor***, and dismissal is

inappropriate.

Likewise in *Fishel v. Mich. State Univ.*, No. 1:15-cv-50, 2016 U.S. Dist. LEXIS 159550

(W.D. Mich. July 19, 2016), the plaintiff argued in direct contravention of *Shukh* that "35 U.S.C.

§ 256 *has no standing requirement*."  *Id*. at *6 (emphasis added).  Consistent with this misguided

view, the plaintiff "failed to plead that he has or will suffer *any injury*."  *Id*. at *8 (emphasis

added).  Again, far from pleading no injury at all, Plaintiff here has pleaded detailed allegations

of professional harm, and Defendants' citation only further highlights that dismissal is

inappropriate.

Thus, like the harm within the mechanical industry, the professional harm within the spa

industry ***independently*** establishes harm and defeats Defendants Motion with regard to standing

for all three patents-in-suit.

### B.  Plaintiff Has Pleaded Deprivation of Ownership of the '702 and '665 Patents

Plaintiff has additionally pleaded deprivation of ownership in the '702 and '665 Patents,

which provides an independent basis for standing with respect to those patents.  (*E.g.*, Compl. ¶

28 ("a favorable decision in this matter would confirm Mr. Comeau's ownership of the '702 and

'665 Patents, which have significant monetary value"), ¶ 38.)  Defendants argue that these

allegations fail as a matter of law, because they contend that one merely "instructive" Ontario

opinion effectively imposes a blanket rule requiring corporate officers to assign patent rights to

the corporation.  (Motion at 10-11 (citing *C.I. Covington Fund Inc. v. White*, 2000 CarswellOnt

4680 (Can. Ont. Super. Ct. J., 2000))).  There is no such rule.

Rather, under Canadian common law, which applies in Ontario, "[t]here is a presumption

that an inventor, even one who is an employee, is entitled to the benefit of his or her own

1

invention. . . . The presumption can apply even if the employee's invention is useful for the employer's business; the employee made use of his employer's time, co-employees, and material; and the employee allowed the employer to use the invention." *Nature-Control Technologies Inc. v. Li*, 2014 BCSC 1868, ¶ 258 (British Columbia Supreme Court, 2014) (attached as Exhibit 1); *Questor Technology Inc v. Stagg*, 2020 ABQB 3, ¶¶ 76-80 (Alberta Court of Queen's Bench, Jan. 10, 2020) (attached as Exhibit 2) (finding that even an express contract granting an employer "all proprietary rights . . . developed by [an employee inventor]," but not expressly using the word "patents" could not overrule the "presumption that all inventions belong to the inventor"). Departure from this default requires performing a fact-intensive evaluation of the "nature and context" of the professional relationship by weighing at least the following eight *Comstock* factors:

> (a) whether the employee was hired for the express purpose of inventing;
>
> (b) whether the employee at the time he [w]as hired had previously made inventions;
>
> (c) whether an employer had incentive plans encouraging product development;
>
> (d) whether the conduct of the employee once the invention had been created suggested ownership was held by employer;
>
> (e) whether the invention is the product of the problem the employee was *instructed* to solve, i.e. whether it was [his] duty to make inventions;
>
> (f) whether the employee's invention arose following his consultation through normal company channels (i.e. was help sought?);
>
> (g) whether the employee was dealing [with] highly confidential information or confidential work;
>
> (h) whether it was a term of the servant's employment that he could not use the ideas which he developed to his own advantage.

*Comstock Canada v. Electec Ltd.*, 38 CPR (3d) 29, 45 FTR 241, ¶ 79 (FCTD 1991) (attached as Exhibit 3) (emphasis in original). *Comstock*—which is the seminal Canadian case on this

topic—further emphasized the potency of this default, explaining that, in contrast to the United States, "the presumption in Canada operates in the direction of freedom, not slavery.  In the absence of reliable *indicia*, the inventor keeps the benefit of the invention."  *Id*. at ¶ 87.

Defendants appear to have omitted any description of this fundamental rule because they contend it does not apply to senior corporate officials.  Not so.  *Comstock* expressly held that "[a]lthough a more senior employee may have a duty of good faith toward his employer, this notion alone does not impede the employee from claiming the invention as his own."  *Id*. at ¶ 79; *Tobin v. De Lanauze*, 2000 CarswellQue 2393, ¶¶ 63, 6, (Cour Supérieure du Québec, 2000) (attached as Exhibit 4) (holding that a corporation "ha[d] no rights to" a patent invented by its sole president, director, and majority shareholder); *Nature-Control*, 2014 BCSC 1868 at ¶¶ 260, 1-2 (holding that the director of a closely held corporation was entitled "to retain beneficial ownership of the . . . Patents").  Rather, the Court held that, even for senior officers, departure from the default rule requires a fact-intensive inquiry, weighing at least the same eight factors enumerated above.  *Comstock*, 38 CPR (3d) 29 at ¶ 79 (enumerating the same eight factors); *Nature-Control*, 2014 BCSC 1868 at ¶¶ 258-59 (emphasizing that "the same factors" should be weighed even where a director is not also an employee).  Indeed, although the inventor in *Comstock* was "a 'senior officer' of [the corporation]," *Comstock*, 38 CPR (3d) 29 at ¶ 94, the Court ruled that he was nevertheless "the exclusive owner" of his invention, *id*. at ¶ 98.  Tellingly, the Court reached this point after extensive analysis of the case law, during which it remarked ***four times*** that "[e]ach case turns on its own facts."  *Id*. at ¶¶ 90-92, 95.

Defendants argue to the contrary that *C.I. Covington Fund Inc. v. White*, 2000 CarswellOnt 4680 (Can. Ont. Super. Ct. J., 2000) (available at Dkt. No. 22-3) effectively set forth a blanket rule obligating senior corporate officers to assign inventions to the corporation.  It

didn't.  *Covington Fund* required assignment of patent rights not because of a director's inherent

obligation, but to remedy an egregious fraud.  There, the inventor served as president, CEO, sole

director, controlling shareholder, and lead of research and development for a corporation.  *Id*. at

¶ 5.  To convince a creditor to fund the corporation's development of a new technology, the

inventor provided extensive documentation that repeatedly and explicitly represented that the

company would own any patents in the technology.  *Id*. at ¶¶ 9-14.  For instance, the Investment

Agreement expressly stated that "The Corporation owns, free and clear of any lien . . . patents . .

. including [t]he U.S. and Canadian patent applications for" the new technology.  *Id*. at ¶ 9.  The

inventor personally attested to the creditor that these "representations and warranties . . . are true

and correct."  *Id*. at ¶ 11.  However, when the corporation failed and could not repay its debt to

the creditor, the inventor looted the patents and founded a new company to exploit them.  *Id*. at ¶

18.  The creditor sued to return the fraudulently transferred patent rights back to the bankrupt

corporation.  Only "[i]n light of all the facts," namely, "a series of representations by the

corporation, made with [the inventor's] participation, respecting the corporation's ownership of

the [] technology, upon which lenders and investors were expected to rely," did the Court find

that transfer of the patent rights to the corporation was appropriate.  *Id*. at ¶¶ 42, 28.

In concluding, the Court succinctly summarized the reasons why assignment of the patent

rights was appropriate there:

> Given the representations about ownership that led Covington to invest in the
> company, the fact that White's principal employment obligation was research and
> development with respect to the Snowfluent technology, and White's use of the
> corporation's resources to develop the technology, Delta should properly be
> regarded as the owner of the patents and patent applications.

*Id*. at ¶ 42.  Not one of these factors is applicable here.  There are no allegations of

misrepresentations made to creditors to secure funding to develop the patented technology.  (*See*

*generally* Compl.)  Gary Comeau's principal employment obligation at SMP was not research

and development.  (Compl. at ¶ 8.)  Rather, "Mr. Comeau's primary responsibilities were managing the day-to-day operations of the Defendant Companies, such as manufacturing, fabrication, and warehousing."  *Id.*  And, Mr. Comeau has not alleged that he used company resources to develop the patented technology.  To the contrary, Mr. Comeau developed the technology "[i]ndependently, of his own accord, and without instruction or direction from the Defendants or employees of the Defendants."  *Id.* at ¶ 8; *id.* at ¶¶ 17, 20.

Defendants' only other legal support for the supposed rule that corporate officers must assign their patent rights is *Helbig v. Oxford Warehousing Ltd.*, 51 OR (2d) 421, 6 CPR (3d) 460 (Ontario Supreme Court, Court of Appeal 1985) (attached as Exhibit 5).  Tellingly, Defendants elected not to attach a copy of this opinion to their Motion.  And again, the case does not support their position.  To the contrary, the Court in that matter declined to address the ownership of patents invented by senior officers, because it was "not a matter which concerns us."  *Id.* at ¶ 22.  But the Court did reject Defendants' position that patent ownership can be resolved by application of a simple rule at the pleading stage.  Rather, it explained that the question of a senior corporate officer's patent rights was a "***difficult matter*** [that] will be resolved by another tribunal."  *Id.* (emphasis added).

Under the correct legal standard, Defendants' Motion fails for at least two independent reasons.  First, when faced with such "fact-intensive and context specific" questions "at the motion to dismiss stage, courts . . . have concluded that it is more appropriate to address the issue at a later stage in the proceedings.  *Banner Life Ins. Co. v. Bonney*, Case No. 2:11-cv-198, 2011 U.S. Dist. LEXIS 121805, at *25 (E.D. Va. Oct. 21, 2011) (Doumar, J.); *Colon Health Ctrs. of Am., LLC v. Hazel*, 733 F.3d 535, 545 (4th Cir. 2013) (finding that the "fact-intensive quality of the substantive inquiry assumes heightened importance when considered in light of the

procedural posture of the instant dispute," and reversing the district court's order dismissing the claim).  Here, Plaintiff has adequately pleaded inventorship, which would result in ownership under the default rule.  (Compl. at ¶ 28.)  Any departure from this default presents a "difficult," contextual, multi-factor inquiry that is unsuitable for judgment on the pleadings.[3]  And even if Defendants' view of the law were correct, judgment on the pleadings would remain inappropriate, because "[t]he determination of whether a director has taken an opportunity belonging to the company is a particularly fact-intensive exercise.  *Nature-Control*, 2014 BCSC 1868 at ¶¶ 206 ("the complexity of factual analysis [in corporate opportunity cases] contrasts with the simplicity of the statement that a corporate director . . . may not usurp a corporate opportunity."); *Questor*, 2020 ABQB 3 at ¶¶ 60-61 (explaining that "[f]idiciary duties do not arise from an employee's title," and outlining a four-factor, fact-based test).

Second, even if the Court were to undertake this inquiry on the pleadings, Plaintiff's allegations are sufficient.  In addition to pleading ownership under the default rule, Plaintiff has pleaded facts sufficient to establish at least four of the eight *Comstock* factors.

| ***Comstock* Factor** | **Pleaded Support for Adherence to Default Rule** |
|---|---|
| (a) whether the employee was hired for the express purpose of inventing | Mr. Comeau was hired before Defendant SMP was in the cover lifter business, and was therefore not hired for the express purpose of inventing. (Compl. ¶ 6.) |
| (b) whether the employee at the time he was hired had previously made inventions | Mr. Comeau did not enter the spa industry until after he was hired, and therefore had not previously made spa inventions.  (Compl. ¶ 6) |
| (e) whether the invention is the product of the problem the employee was *instructed* to solve | Mr. Comeau invented the claimed subject matter "without instruction or direction from the Defendants."  (Compl. ¶ 8; *id.* at ¶ 20.) |
| (f) whether the employee's invention arose following his consultation through normal company channels (i.e. was help sought?) | Mr. Comeau invented the claimed subject matter "independently and without the direction, assistance, or contribution" of the Defendants. (Compl. ¶ 20; *id.* at ¶ 8.) |

---

[3] *See Shupe v. DBJ Enters.*, LLC, No. 1:14-cv-308, 2015 U.S. Dist. LEXIS 22284, at *9-10 (M.D.N.C. Feb. 25, 2015) (holding that the question of whether "an employee [worked] in a 'bona fide executive capacity'" is a question of fact typically not amenable to resolution on the pleadings).

Where a multi-factor, contextual test applies at the pleading stage, courts in this circuit have found allegations establishing a ***single factor*** sufficient to defeat a motion to dismiss.  For instance, the *Comstock* factors are analogous to the threshold evaluation of whether a worker is classified as an employee or a contractor under the Fair Labor Standards Act.  There—like here—courts weigh six factors relating to the character of the employment relationship.  *Elsayed v. Family Fare LLC*, No. 1:18-cv-1045, 2020 U.S. Dist. LEXIS 27064, at *18-19 (M.D.N.C. Feb. 18, 2020).  Because "a plaintiff need not show that all factors weigh in their favor to state a claim," pleading "one factor alone may suffice to demonstrate an employee classification" and defeat a motion to dismiss.  *Id.* at *19 (denying a motion to dismiss where plaintiff pleaded three factors); *Shupe v. DBJ Enters.*, LLC, No. 1:14CV308, 2015 U.S. Dist. LEXIS 22284, at *8-9 (M.D.N.C. Feb. 25, 2015) ("While *one factor alone* is not dispositive and consequently may not survive summary judgment . . . Plaintiff has stated a plausible claim" and defeated a motion to dismiss.) (emphasis added).  Similarly here, because Plaintiff here has pleaded facts sufficient to establish not one but four of the *Comstock* factors, he has plausibly established a right to ownership of the '702 and '665 Patents, and dismissal is inappropriate.  *Chartis*, 834 F. Supp. 2d at 461 (a facial challenge to the "sufficiency of [the Complaint] should be denied unless 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'").

Defendant Cunerty's hypocrisy highlights the flaws in Defendants' Motion.  Cunerty is presently listed as the sole inventor of the '702 and '665 Patents, and USPTO assignment records show him to be the purported owner of both.  (Compl. ¶¶ 24, 44.)  But, Defendants do not dispute that, like Plaintiff, Cunerty was a director of Defendant SMP at the time he claims to have invented the subject matter of the '702 and '665 Patents.  *Id.* at ¶ 4.  If Defendants' legal

1

theory were correct, *Cunerty* would be in active breach of his fiduciary duty to SMP.  Any distinction Defendants might draw to attempt to reconcile this conflict would only highlight that a director's obligation to assign patent rights is a complex, fact-intensive question unsuitable for resolution on the pleadings.

## II.    Defendants' False Affidavit Generates a Dispute of Fact That Precludes Dismissal of Ontario Ltd

Because Defendants' motion to dismiss Ontario Ltd for lack of personal jurisdiction is premised on a false affidavit directly controverted by official records, there is at minimum a genuine factual dispute that precludes dismissing Defendant Ontario Ltd.[4]  Under 35 U.S.C. § 293, this Court has personal jurisdiction over foreign owners and assignees of U.S. patents. Plaintiff's Complaint alleges that this Court has personal jurisdiction over Ontario Ltd because Ontario Ltd has an ownership interest in the '823 Patent.  (Compl. ¶ 43.)  Defendants mount a factual challenge, arguing that that § 293 is inapplicable to Ontario Ltd, because they contend Ontario Ltd does not in fact hold an ownership interest in the '823 Patent.  In support, Defendants offer a sworn affidavit from Defendant Cunerty's wife, May Anis, who professes to be "knowledgeable about SMP and Ontario's . . . procurement and maintenance of intellectual property rights."  (Dkt. No. 22-1, ¶ 2.)  Ms. Anis declares under penalty of perjury that USPTO assignment records filed by Defendants on November 3, 2017, which Defendants then represented to be an assignment to Ontario Ltd, do not actually have that legal effect.  (Dkt. No. 22-1 at ¶¶ 5-6.)  Ms. Anis further attests that Defendant SMP "remains the *sole owner* of the '823 Patent."  *Id.* at ¶ 6 (emphasis added).

---

[4] Defendants do not dispute the Court's personal jurisdiction over Defendants SMP Specialty Metal Products Inc. and John Cunerty.

But, whether through deceptive intent or confusion, Ms. Anis' affidavit is false. On June 19, 2018—six months *after* the purportedly mistaken filing of assignment documents before the USPTO—Defendants' patent counsel filed an assignment with the Canadian Intellectual Property Office expressly purporting to assign to Ontario Ltd ownership rights in the United States Application No. 14/713,176, which by this time had already issued as the '823 Patent, and "all related applications and patents thereon." (Declaration of David Reive ("Reive Decl."), submitted herewith as Exhibit 6, at Ex. A, pp. 3-8.))[5] Tellingly, a line edit in this filing struck the name of the original assignee and replaced it with Ontario Ltd, indicating not a mistake but a conscious effort to assign rights to Ontario Ltd.

---

**ASSIGNMENT / DECLARATION**

WHEREAS, **JOHN JOSEPH CUNERTY**, whose full post office address is **55 Sir Williams Lane, Toronto, Ontario M9A 1V2 Canada** and **GARY MARK COMEAU** whose full post office address is **644 Mullin Way, Burlington, Ontario L7L 4J4 Canada**, (hereinafter "the Assignors") are the inventors of an invention disclosed in United States patent application no. **14/713,176**, filed on **May 15, 2015** entitled LIFT ASSEMBLY AND SPA INCLUDING THE SAME, **United States** patent application no. **14/713,193** filed **May 15, 2015** entitled LIFT ASSEMBLY AND SPA INCLUDING THE SAME and PCT international application no. **PCT/CA2015/051126** filed **November 3, 2015** entitled LIFT ASSEMBLY AND SPA INCLUDING THE SAME (hereinafter "the Applications").

1140398 ONTARIO LTD.
AND WHEREAS, ~~SPECIALTY METAL PRODUCTS INC.~~ whose full post office address is **326 Watline Avenue, Mississauga, Ontario L4Z 1X2 Canada**, (hereinafter "the Assignee"), has acquired from the Assignors, their entire right, title and interest in and to the invention, in all countries of the world, including their rights to these Applications, and all related applications and patents thereon, including any and all, international, national and regional phase applications based on these Applications, and other counterpart applications in all countries, and any and all substitutes, divisionals, continuations and

---

[5] For easy reference, Plaintiff has added red page numbers in the form "Exhibit A – Pg. X of 8" to the lower right corner of Ex. A to the Reive Declaration (Ex. 1). The document is otherwise unaltered.

(Reive Decl. at Ex. A, p. 5 (edits in original, yellow highlighting added).)  The cover letter to this assignment confirms that Defendants intended to assign to Ontario Ltd, explaining that the insertion of Ontario Ltd as assignee was a "clerical correction."

---

**ASSIGNMENT**

The Commissioner of Patents
Canadian Intellectual Property Office
Place du Portage I
50 Victoria Street, Room C-114
Gatineau, Quebec   K1A 0C9

# 3373328

Dear Commissioner:

Re:    **LIFT ASSEMBLY AND SPA INCLUDING THE SAME**
        **Canadian Patent Application No. 2,966,668**
        **National Phase Entry of PCT/CA2015/051126**
        **International Filing Date: November 3, 2015**
        **Applicants: John Joseph Cunerty and Gary Mark Comeau**

Please find attached an Assignment from the inventors to 1140398 Ontario Ltd. for registration.

As authorized in the assignment, Bereskin & Parr LLP made a clerical correction to the assignee name because the listed name "Specialty Metal Products Inc." had already been changed at the time the assignment was signed to "1140398 Ontario Ltd." by an Articles of Amendment.   Thus the two company names refer to one and the same company.

---

(Reive Decl. at Ex. A, p. 3 (yellow highlighting added).)

Even aside from the light it casts on Ms. Anis' capacity for truthfulness, this assignment has troubling implications.  Most salient among them, Plaintiff Gary Comeau executed this assignment agreement in June 2017, shortly before his September 2017 departure from SMP. Defendants' decision to literally rewrite the agreement in 2018 after Mr. Comeau's departure to specify a new assignee is more than a "clerical correction," and raises ethical concerns.  Indeed, Defendants' cover letter represented that the purported "clerical correction" was warranted because "the listed name 'Specialty Metal Products ***Inc***.' [i.e., Defendant SMP[6]] had already changed . . . to '1140398 Ontario Ltd. [i.e., Defendant Ontario Ltd].'"  (Reive Decl. at Ex. A, p. 3 (emphasis added)).  But, in fact, it was the *separate entity* S.M.P. Specialty Metal Products

---

[6] Anis Decl. (Dkt. No. 22-1) ¶ 5 (explaining that "the omission of the leading 'SMP' from the name of the entity . . . was a typographical error); Compl. ¶ 41 (same).

1

*Ltd.* that changed its name to 1140398 Ontario Ltd. (Anis Decl. (Dkt. No. 22-1) ¶ 5 ("Prior to being named '1140398 Ontario Ltd.,' Defendant Ontario Ltd. was named 'S.M.P. Specialty Metal Products Ltd.'"); Compl. ¶ 6.) Defendants' fabricated justification confirms their fraudulent intent.

At a minimum, this express assignment to Ontario Ltd filed by Defendants with the Canadian Intellectual Property Office creates a serious dispute of fact regarding Ontario Ltd's ownership interest in the '823 Patent. As Defendants acknowledge, under Rule 12(b)(2), "[t]o the extent there are genuine factual disputes . . . presented to the Court, they are resolved in the plaintiff's favor." Motion at 6; *Tom Tom*, 893 F. Supp. 2d at 787 ("a 'district court must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts . . . in the plaintiff's favor.'"). Accordingly, Defendants' motion to dismiss Ontario Ltd should be denied.

## CONCLUSION

For the reasons stated herein, Plaintiff respectfully submits that the allegations of Plaintiff's Complaint are legally sufficient, and Defendants' Motion to Dismiss should be denied. With regard to standing, Plaintiff's allegations of harm to his professional reputation and prospects within both the mechanical industry in general, and the spa industry in particular, provide two independent bases for denying Defendants' Motion with respect to all three patents-in-suit. Further, Plaintiff's allegations of deprivation of ownership of the '702 and '665 Patents provide another independent basis to deny Defendants' Motion with respect to those patents. Finally, because Defendants' factual challenge to Defendant Ontario Ltd's ownership interest in the '823 Patent is based on a false affidavit, there is at least a dispute of fact precluding dismissal of Ontario Ltd for lack of personal jurisdiction.

Dated: March 29, 2021

By: _____/s/_____
Charles B. Molster, III Va. Bar No. 23613
LAW OFFICES OF CHARLES B.
MOLSTER, III PLLC
2141 Wisconsin Avenue, N.W., Ste. M
Washington, D.C. 20007
(703) 346-1505
cmolster@molsterlaw.com

Andrew D. Gish (admitted *pro hac vice*)
GISH PLLC
41 Madison Avenue, Floor 31
New York, NY 10010
(212) 518-7380
andrew@gishpllc.com

*Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 29, 2021, the foregoing was electronically filed with the

Clerk of the Court using the CM/ECF system, thereby effecting service upon all counsel of

record through the Notice of Electronic Filing issued by the system.


_____/s/_____
Charles B. Molster, III